IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | No. 4:21-bk-01056-MJC |
| POLYMER INSTRUMENTATION | : | |
| & CONSULTING SERVICES, | : | Chapter 11 |
| LTD. | : | |
| Debtor | : | |

## AMENDED
## PLAN OF REORGANIZATION OF
## POLYMER INSTRUMENTATION & CONSULTING SERVICES, LTD.

Polymer Instrumentation & Consulting Services, Ltd. (the "Debtor" or "Polymics")

proposes the following Plan of Reorganization (the "Plan") with respect to its Chapter 11

case:

## ARTICLE I
## DEFINITIONS

Set forth below are various terms which shall, except where the context otherwise

requires, have the respective meanings listed herein.  All of the following meanings shall

be applicable to the singular and plural forms of the following defined terms:

**1.1.    Accounts Receivable** shall mean any sums owed to the Debtor for charges

on account of the Debtor providing services, rents owed to the Debtor or any other sum

owed to the Debtor as part of the Debtor's business operations.

**1.2.    Administrative Claim** shall mean an administrative expense from and after

May 10, 2021, the date on which the Debtor's Chapter 11 Case commenced, which is

entitled to priority in accordance with Section 507(a)(2) of the Code and allowed under

Section 503 of the Code.

**1.3.** **Administrative Professional Claim** shall mean compensation and reimbursement of professionals, including attorneys, accountants, experts, consultants and realtors as allowed by the Court under Section 330 of the Code.

**1.4.** **Affiliated Company** shall mean any affiliate of the Debtor including, but not limited to, Arylmax HT Material (China) and Polymics Singapore.

**1.5.** **Allowed Claim** shall mean a Claim which is scheduled pursuant to the Code or stipulated of record in this Chapter 11 Case, other than a Claim scheduled as disputed, contingent or unliquidated; or which is identified in a Court approved Stipulation filed of record in this Chapter 11 Case; or which has been estimated under Section 502(c) of the Code; or which has been filed pursuant to Section 502(a) of the Code, and with respect to which no objection to the allowance thereof has been interposed within the time allowed by the Court or Bankruptcy Code; or as to which any objection has been overruled (and to the extent so overruled) by a Final Order. An Allowed Claim shall not include any interest accruing on a Claim except as specifically authorized by the Plan.

**1.6.** **Arylmax HT Material (China)** shall mean a company which is wholly owned by the Debtor and formerly an operating entity of the Debtor.

**1.7.** **Assets** shall mean all of the Debtor's Personal Property and Vehicles as of the Petition Date.

**1.8.** **Cash** shall mean cash and cash equivalents.

**1.9.** **Causes of Action** shall mean any action, proceeding, agreement, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license

and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

1.10.  **Chapter 11 Case** shall mean the Polymer Instrumentation & Consulting Services, Ltd. proceeding commenced by a voluntary petition under Chapter 11 of the Code at Case No. 4:21-bk-01056-MJC in the United States Bankruptcy Court for the Middle District of Pennsylvania.

1.11.  **China Litigation** shall mean certain litigation brought by the Debtor together with Applied Polymer Materials, Inc., Polymics (Kunshan) Ltd. and Arylmax (Chongqing) Ltd. v. Kaisheng New Materials (Shangdong) Ltd., in the Peoples Supreme Court of China.

1.12.  **Claim** shall have the meaning as provided by Section 101(4) of the Code.

1.13.  **Code or Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101, et seq., commonly referred to as the Bankruptcy Code.

1.14.  **Composite Rod Systems** shall mean an entity in which the Debtor owns a 20% interest.

1.15.  **Contingent Claim** shall mean any Claim for which the Debtor is not directly liable, is listed as contingent on the Schedules, and has not been determined otherwise by a Final Order.

3

1.16. **Court or Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Pennsylvania in which Court the Debtor's Chapter 11 case is pending.

1.17. **Debtor** shall mean Polymer Instrumentation & Consulting Services, Ltd., the Debtor in the above Chapter 11 Case.

1.18. **Disputed Claim** shall mean any Claim which is listed as disputed on the Schedules, or to which an objection to the allowance thereof has been interposed, and has not been determined otherwise by a Final Order.

1.19. **Disbursing Agent** shall mean Robert E. Chernicoff of Cunningham, Chernicoff & Warshawsky, P.C., or any substitute person as such law firm shall designate.

1.20. **Distribution Date** shall mean the date on which distribution to Class 4 Claim holders will be paid. Such Distribution Date shall be determined by the Disbursing Agent based upon whether or not a large number of Claims are being challenged so as to make distribution unfeasible, or whether there are insufficient funds on hand to make a distribution for various reasons, including, but not limited to, the fact that a liquidation or collection of a sufficient amount of the Assets (as defined below) has not occurred. The Distribution Date may also be extended based upon a determination by the Disbursing Agent that liquidation of any of the Remaining Assets is imminent such as to warrant a delay.

1.21. **Effective Date** shall mean the Effective Date of the Plan which date shall be the first date of the month following sixty (60) days after the Confirmation Date becomes final, and shall not have been reversed, stayed, or adversely modified or amended. The

4

Effective Date is as further set forth in Section 15.2 of the Plan and such date is subject to the right of the Debtor to request that the Court extend the Effective Date.

1.22. **Final Distribution** shall mean a date no less than thirty (30) days after the Disbursing Agent determines, in his discretion, upon consultation with the Official Committee of Unsecured Creditors, if such then exists, or if the Court so Orders, none of the Remaining Assets of the Debtor exist which have not been liquidated, or are incapable of being liquidated, or that insufficient Assets exist to justify collection or liquidation.

1.23. **Final Order** shall mean an Order of the Bankruptcy Court which has not been reversed or stayed and to which:

1.23.1. The time to appeal or seek review, rehearing or certiorari has expired and no timely appeal has been filed, or

1.23.2. Any appeal has been finally resolved.

1.24. **Fulton or Fulton Bank** shall mean Fulton Bank, N.A., a banking institution, which is a secured creditor of the Debtor.

1.25. **IP** shall mean intellectual property and patents owned by the Debtor.

1.26. **Personal Property** shall mean the Debtor's present and future accounts receivable, chattel paper, securities, partnership interests, entity interests, documents, equipment, furniture, general intangibles, IP, inventory, and all products and proceeds thereof.

1.27. **Petition Date** shall mean May 10, 2021.

1.28. **Plan** means this Plan, and as it may be modified or amended, as is applicable.

1.29. **Polymics** shall mean the Debtor, Polymer Instrumentation & Consulting Services, Ltd.

1.30. **Polymics Singapore** shall mean an entity wholly owned by the Debtor and formerly operated by the Debtor.

1.31. **Priority Claim** shall mean a Claim, other than an Administrative Claim or Tax Claim, as to which priority in payment is asserted pursuant to Section 507(a) of the Code.

1.32. **Priority Tax Claim** shall mean a Tax Claim, as to which priority in payment is asserted pursuant to Section 507(a) of the Code.

1.33. **Pro Rata** shall mean the same proportion that a Claim in a particular class bears to the aggregate amount of all allowed Claims in such class.

1.34. **SEDA COG** shall mean SEDA Council of Governments, a creditor of the Debtor.

1.35. **State College Facility** shall mean the Debtor's business location in State College, Centre County, Pennsylvania.

1.36. **Tax Claim** shall mean a Claim, other than an administrative Claim or a secured Claim, as to which priority in payment is allowed pursuant to Section 507(a)(8) of the Code.

1.37. **Texas Location** shall mean an office and warehouse leased by the Debtor in Spring, Texas.

1.38. **Vehicle** shall mean a 2011 Acura MDX, a 2006 GMC Truck or a 2008 Toyota Truck, owned or formerly owned by the Debtor, or any vehicle, if any, which is titled by an appropriate state agency and owned by the Debtor.

6

**1.39.**   Any term which is used in this Plan which is not defined herein, but is used in the Bankruptcy Code or found in the Bankruptcy Code, has the meaning assigned to it in the Code.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

**Certain Claims and interests in this Case are divided into unclassified groups and are named as Classes for convenience only as follows:**

**2.1.   Class 1.  Professional Administrative Costs.**

**2.1.1   Class 1.**  The expenses and Claims of administration for compensation and reimbursement of professionals as allowed by the Court under Section 330 of the Bankruptcy Code.

**2.2.   Class 2.  Administrative Claims.**

**2.2.1**   To the extent that they are allowed, all Administrative Claims and expenses of administration, other than those set forth in Class 1 or in any other Class, incurred during the administration of the proceeding, to the extent that same exist.

**2.3.   Class 3.  Priority Tax Claims.**

**2.3.1   Class 3.**       All Claims to the extent that such are allowed pursuant to Section 507(a)(8) of the Code, and as such Claims exist on the date of the filing of the Chapter 11 Petition in this Case, including, but not limited to any Priority Tax Claims of the United States of America, Internal Revenue Service, or any  state or any local taxing authority, to the extent that any such Claim is not disputed, and entitled to priority status under the Code.  Such payment shall occur from the sale of Debtor's Assets.  Payment will occur in the order of priority under the Bankruptcy Code.

**The classified Claims and interests in this case are divided into classes as follows:**

**2.4.  Class 4.  Fulton Bank.**

**2.4.1**   This Class consists of the Claim of Fulton Bank.

**2.4.2**   At the time of the filing of the Petition, Fulton Bank held a first priority lien security interest in the Debtor's Personal Property, except for Vehicles, subject to any purchase money financing which financing is properly secured on certain of the Debtor's assets.

**2.5.  Class 5.        SEDA COG.**

**2.5.1**   This Class consists of the Claim of SEDA COG.  This Claim is based upon two (2) credit facilities granted by SEDA COG to the Debtor.

**2.5.2**   At the time of the filing of the Petition, SEDA COG had a security interest in certain equipment for which it provided purchase money financing consisting generally of a VECOPlan Waste Shredder, a Power Grinder, a 50mm Single Screw Extruder and a Take Up Roller.  SEDA COG is owed $17,117.37, on each of the two (2) loans to the Debtor, as of the Petition Date.

**2.6    Class 6.        General Unsecured Claims.**

**2.6.1.**  All other Claims which are not otherwise classified herein which are Allowed Claims, including all non-priority, unsecured Claims against the Debtor which are not disputed or contingent and are liquidated, or for which an Allowed Claim has been filed shall constitute the Class 6 unsecured Claims in this case.

8

**2.7    Class 7.   Equity Holders.**

**2.7.1**   The equity interests of the various shareholders of the Debtor who are set forth on Exhibit "A" attached hereto and made a part hereof.

**ARTICLE III**
**CLASSES NOT IMPAIRED OR UNCLASSIFIED**
**UNDER THE PLAN**

The following classes of Claims are not impaired or are not to be considered classified under the Plan:  Classes 1, 2 and 3.

**ARTICLE IV**
**TREATMENT OF UNIMPAIRED CLASSES OR UNCLASSIFIED CLAIMS**

The Claims of each of the classes listed as unimpaired or not classified in Article III, shall be paid and satisfied as follows:

**4.1 Class 1.  Professional Administrative Claims.**

All Class 1 Claims, as allowed by the Court, shall be paid in cash on or before the Effective Date of this Plan or as otherwise agreed in writing by the claimant and the Debtor. The funds otherwise owed to professionals which the Court has not yet approved and are required by the Code to be approved by the Court shall be escrowed until necessary approvals have been obtained.  The provisions of this Section 4.1 are also subject to the terms of Article XIV of this Plan.

**4.2    Class 2.  Administrative Claims.**

**4.2.1.**  All Class 2 Claims, as allowed by the Court shall be paid as they become due in the ordinary course of business, on or before the Effective Date of this Plan, or as soon as is reasonably possible thereafter, or as otherwise agreed by the claimant and the Debtor,

9

whichever of these dates shall occur later. All U.S. Trustee Fees owing as of the Effective Date must be paid prior to the Effective Date.

**4.3. Class 3  Priority Tax Claims**

    **4.3.1.**  To the extent that any priority tax claims exist, all priority tax Claims in Class 3, of all taxing authorities, shall include only pre-petition taxes and interest accrued to the Petition Date only, and shall not include any tax penalties (tax penalties do not include any trust fund penalties under Section 6672 of the Internal Revenue Code).  Any applicable post-Petition payments shall be credited against any Priority Tax Claims.

    **4.3.2.**  All priority tax claims, will be paid in full on or before five (5) years after the Petition Date, together with interest at the rate of three percent (3%) per annum, which interest shall begin as of the Effective Date of the Plan.  Payments will also occur from the proceeds of any liquidation of Assets in the order of priority under the Bankruptcy Code.

**ARTICLE V**
**TREATMENT OF IMPAIRED CLASSES**

**5.1    Class 4      Fulton Bank**

    **5.1.1**  As of the Petition Date, Fulton Bank had a first priority security interest on all Personal Property, except for Vehicles, and subject to any properly perfected purchase money financing.

    **5.1.2**  Fulton Bank filed a  Claim in the amount of $3,454,373.04, as of the Petition Date, which sum includes pre-Petition interest, attorneys' fees and costs, plus continuing interest, attorneys' fees and costs as provided in the loan documents attached to Fulton Bank's Claim.  Fulton Bank is owed continuing interest, reasonable attorneys' fees and costs as set forth in the Fulton Bank loan documents, which are attached to Fulton Bank's

10

Claim. During the course of the Case, Fulton Bank has received interest payments at the rate of 6% per annum on the unpaid principal balance owed to Fulton Bank.

      **5.1.3** Fulton Bank will receive regular monthly interest payments at the rate of six percent (6%) per annum on the unpaid principal balance, on the allowed principal balance of its Claim until such time as Fulton Bank is paid in full or the Assets of Debtor are fully distributed. Fulton Bank will receive the net proceeds from the sale of any of the Assets to the extent that Fulton Bank has a lien on such Assets, subject to the provisions of Article VI of this Plan. The net proceeds will consist of any sums remaining after payment of all reasonable and customary costs regarding the sale of any of the Assets, payment of any prior purchase money liens and including, without limitation, professional fees.

      **5.1.4** In the event that Fulton Bank is not paid in full from the net proceeds of sale of the Debtor's Assets, Fulton Bank will receive the net proceeds from the China Litigation and as more fully set forth in Article VI of the Plan.

      **5.1.5** Until such time as Fulton Bank is paid in full, as to its allowed secured Claim, or the Assets of Debtor are fully distributed, Fulton Bank shall retain its lien in the Debtor's Personal Property subject to purchase money security interests as set forth in this Plan.

**5.2**    **Class 5**       **SEDA COG**

      **5.2.1** As of the Petition Date, SEDA COG, as security for two (2) loans to the Debtor, has a security interest in the following equipment:

        a.     Vecoplan Waste Shredder, Model 1100 XL, Serial No. 13228010;

        b.     Power Grinder;

        c.     50mm Single Screw Extruder, Model YJ-P550, Serial No. 8861020101; and

d.     Take Up Roller, Model TR003, Seal No. 8861020101-TR.

(the foregoing are collectively the "SEDA COG Collateral")

**5.2.2**   The Debtor owed SEDA COG $17,117.37, as of the Petition Date on each of the two (2) loans granted by SEDA COG to the Debtor.

**5.2.3**   SEDA COG will receive the net proceeds from the sale of any of the SEDA COG Collateral, up to the full amount of its then-allowed secured Claim from the sale of any of the SEDA COG Collateral as to a particular loan.  Payment to SEDA COG from the sale of any such SEDA COG Collateral shall be applied only to the particular loan secured by such SEDA COG Collateral.  Any excess from the sale of such SEDA COG Collateral shall be thereafter paid to Fulton Bank until such time as Fulton Bank's allowed secured Claim is paid in full.  The net proceeds shall thereafter be paid to Class 6, Unsecured Claim Holders.   The net proceeds will consist of any sums remaining after payment of all reasonable costs regarding the sale of any of the SEDA COG Collateral, payment of any prior purchase money liens and including, without limitation, professional fees.

**5.2.4**   Until such time as SEDA COG is paid in full as to any of its allowed secured Claims, SEDA COG shall retain its lien in the specific SEDA COG Collateral as to such Claim only.

**5.3**   **Class 6**        **General Unsecured Creditors**

**5.3.1.**  Class 6 includes all other Claim holders of the Debtor who are not otherwise classified under the Plan, including all general unsecured creditors, regardless of the entry of judgments in favor of any such creditors.

**5.3.2**.  As set forth below in Section VI, the Debtor intends to sell all of its Assets then existing (the "Remaining Assets") and its business (as defined below).  After payment in full of all Class 1 Professional Administrative Claims, Class 2 Administrative Claims and Class 3 Priority Tax Claims, and any applicable Class 4 and Class 5 creditors as to each class's Claim holders' collateral, Class 6 unsecured creditors will be paid any proceeds up to the full amount of any allowed unsecured Class 6 Claim from any net proceeds remaining from the sale of any of the Debtor's Assets.  After liquidation of the Debtor's Assets which remain after payment to Classes 1 through 5 Claim holders in accordance with this Plan, and upon a distribution occurring as set forth below, distribution shall be made pro rata to Class 6 allowed Claim holders from the liquidation of the Remaining Assets.  Payment to Class 6 Claim holders shall not include any post-Petition interest.

**5.4.    Class 7        Equity Holders**

**5.4.1.**  The equity held by the Equity Holders is to be canceled under the Plan.  The Equity Holders shall retain their respective equity in the Debtor only to permit the liquidation of the Assets of the Debtor, including the Remaining Assets.  The president of the Debtor, Tim Hsu, Ph.D., shall remain as president for purpose of causing the Plan to be effectuated.

**ARTICLE VI
MEANS FOR EXECUTION OF THE PLAN**

**6.1    Operations of the Debtor**

The Debtor intends to continue to operate until such time as a purchaser for its Assets is located and closing upon a sale of all of the Debtor's Remaining Assets and its

Business occurs. The Debtor believes it will generate sufficient funds from its operations to continue to pay creditors under the Plan until such time as a liquidation occurs.

## 6.2    China Litigation

The Debtor intends to continue to pursue the China Litigation. The Debtor believes that such litigation could bring a considerable amount of funds as it has a judgment in China for the net sum of approximately $3,000,000.00. The difficulty in the litigation is the collection and additional actions being taken by the Defendant.

Fulton Bank has the first lien on the proceeds of such litigation. To the extent that Fulton Bank is not otherwise paid in full, as to its Claim filed against the Debtor, Fulton Bank will receive the net proceeds from the China litigation to the extent Debtor receives any such proceeds. Any additional sums from the China Litigation over and above what is owed to Fulton Bank will be utilized to fund the balance of the payments in the Plan. All payments to Fulton Bank are subject to the other provisions of this Plan.

## 6.3    Sale and Liquidation of Assets

The Debtor intends to market the Remaining Assets and its business (the "Business") in its entirety by utilization of an investment banker who will be engaged by the Effective Date. In the event that a buyer for the Debtor's Remaining Assets and Business does not occur in a reasonable period of time, the Debtor, may, at its option, determine to hold an auction of its Assets. Such auction sale shall occur within nine (9) months after the Effective Date. At such auction, Fulton Bank shall be entitled to credit bid for the Assets up to the full amount of Fulton Bank's Claim. Prior to such sale or liquidation, the Debtor intends to finish any ongoing projects and work in progress which

it may have and, thereafter shall generate appropriate invoices and collect the receivables created thereby.

**6.4    Final Distribution**

Prior to any distribution from the sale of the Remaining Assets or Business, if sufficient funds exist, the sum of $60,000.00 shall be set aside to pay ongoing administrative expenses, including professional fees for attorneys and accountants, the cost of preparing and filing interim and final tax returns, the costs of distribution and U.S. Trustee's Fees, if any.  As Section 1.20 of the Plan provides, in the event that Distribution is not justified, the Distribution Date may be extended from time to time.  Upon the determination by the Disbursing Agent that collection of any further funds from the Remaining Assets is not viable and collectable, and that Claims have been sufficiently fixed, then Final Distribution shall occur within a reasonable period of time thereafter as determined by the Disbursing Agent.  The Disbursing Agent shall be permitted reasonable compensation for services in connection with Distributions.  Prior to final Distribution, an amount shall be estimated which will be necessary to pay all administrative expenses, including the costs of disbursing funds.  Any funds over and above the estimated amount shall be part of the Final Distribution.

**ARTICLE VII**
**EXECUTORY CONTRACTS**

**7.1.    Real Estate Leases**

**7.1.1    State College Lease.**  The Debtor has a lease of its main business facility at 2215 High Tech Road, State College, Centre County, Pennsylvania.  Such lease has

15

previously been assumed.  To the extent it is not assumed, such lease is assumed upon the Effective Date of the Plan, to the extent such assumption did not previously occur.

**7.1.2   Texas Lease**.  The Debtor has a non-residential real estate lease for property located at 8092 FM 2920 Road, Suite 200, Spring, Texas.  This lease of a sales office and warehouse.  Such lease has previously been assumed.  To the extent it is not assumed, such lease is assumed upon the Effective Date of the Plan, unless previously assumed.

**7.2   Insurance**

Any of the Debtor's insurance contracts as to liability, casualty and property are assumed upon Confirmation of the Plan and shall remain in full force and effect until such time as terminated by the Debtor or upon any particular asset which is the subject of the insurance policy being liquidated.

**7.3   Employment Agreements**

Any employment agreements are assumed as of the Effective Date of the Plan.

**7.4   SEDA COG**

If the SEDA COG credit facilities are leases, such leases are assumed as of the Effective Date, subject to the provision of Section 5.2 of the Plan as to payment.

**7.5   Miscellaneous**

Any agreements for licenses, web hosting, energy demand, provision of utilities or cellular telephones shall be assumed as of the Effective Date of the Plan, to the extent that any such exist.

16

**7.6.    Arrearages**

Any lessor to the Debtor, or contract party which believes it may have a claim for arrearages for any lease or contract assumed hereunder must provide the amount of such arrearages to the Debtor within **twenty (20) days** after Confirmation of the Plan.

**7.7.    Rejection Claim**

Any Claim based upon a rejected contract or lease shall be required to be filed on or before **twenty (20) days** subsequent to the Confirmation Date of the Plan or such Claim shall be deemed barred.  Except as otherwise set forth in this Plan, all such Claims shall be under and pursuant to and subject to the provisions of Section 365 of the Code.

## ARTICLE VIII
## PROCEDURE FOR RESOLVING DISPUTED CLAIMS

**8.1.    Objections to Claims.**

The Debtor reserves the right to object to any Claims as filed with the Court.  The time period for the Objections to Claims may be set by the Court at the Confirmation Hearing or at such other date.  Any Objections shall be served upon the holder of the Claim to which an Objection is made.

**8.2.    Prosecution of Pending Objections to Claims.**

Objections to Claims that are pending as of the Confirmation Date, or were made after the Confirmation Date, shall be prosecuted after the Confirmation Date.  The objecting party shall have the discretion to litigate to judgment, settle or withdraw Objections to disputed Claims.

17

**8.3. Payment of Disputed Claims.**

Except as may be otherwise agreed with respect to any disputed Claim, no payments shall be paid with respect to all or any portion of a disputed Claim unless and until all Objections to such disputed Claim have been determined by a final Order. Payments and distributions to each holder of a disputed Claim, to the extent that it ultimately becomes an allowed Claim shall be made in accordance with the provisions of this Plan. Upon resolution of the disputed Claim, final distribution to such Claim holder, pro rata, shall occur. The Debtor reserves the right to propose a payment schedule as to any such disputed Claim which differs from that of other unsecured Claim holders.

**8.4. Payments to Unsecured Creditors.**

Payments to Unsecured Creditors shall occur through the Disbursing Agent, which shall be permitted to impose a reasonable charge upon the distribution to unsecured creditors for such services.

## ARTICLE IX
## RETENTION AND ENFORCEMENT OF CLAIMS
## BELONGING TO THE ESTATE

**9.1.**

All preference Claims pursuant to Section 547 of the Code, all fraudulent transfer Claims pursuant to Section 548 of the Code, all Claims relating to post-Petition transactions under Section 549 of the Code, all Claims recoverable under Section 550 of the Code, all Claims against a third party on account of an indebtedness, and any other Claims and/or Causes of Action, whether filed in Court or not, owed to or in favor of the Debtor, are hereby preserved and retained for enforcement subsequent to the Effective Date of the Plan,

18

whether initiated prior to the Effective Date or not. Notwithstanding anything herein to the contrary, the Debtor shall, within ten (10) days after the Effective Date, take all necessary steps to dismiss, with prejudice, its counterclaim filed against Fulton Bank in the Court of Common Pleas of Centre County, Pennsylvania, to Case No. 2019-3802 and Case No. 2020-1882.

**ARTICLE X**
**CONFIRMATION REQUEST**

**10.1. Impaired Classes to Vote.**

Only Classes of creditors and interest holders that are impaired shall be entitled to vote as a Class to accept or reject the Plan. Those Classes of creditors which are not impaired or are not classified, that is Classes 1, 2 and 3, shall not be permitted to vote on the Plan.

**10.2. Acceptance by a Class of Creditors.**

A Class of creditors shall have voted to accept the Plan if the Plan is accepted by creditors of such Class that holds at least two-thirds (2/3) of the aggregate dollar amount, and more than one- half (½) in number of the allowed Claims of creditors of such Class that vote to accept or reject the Plan.

**10.3. Confirmation Request.**

If one or more impaired Classes of Claims or interests fails to accept the Plan under Section 1126 of the Code and all of the applicable requirements of Section 1129(a) of the Code have been satisfied other than Section 1129(a)(8) of the Code, the Debtor requests that the Court confirm the Plan pursuant to the provisions of Section 1129(b) of the Code as it applies to Claims and Interests. Further, in the event that the Class 6, Unsecured

19

Creditors, has not accepted the Plan in the requisite numbers which are necessary and required under Section 1126 of the Code, then as part of the confirmation process and in a motion to request confirmation, the Debtor may make available to other parties the right to bid for the equity of the Debtor in its assets, provided that any such bid is on certain terms and conditions. Included in such terms and conditions may be the requirement that any guaranty by the current equity holders of the Debtor's obligations to its various secured creditors be removed or replaced by new obligors. Any such acquisition of the equity will also have the requirement that any payment by such acquiring party indemnify the Debtor as to secured debt. These requests will be part of the procedure under the Confirmation process in the event that the requisite number of votes under Section 1129 of the Code in favor of the Plan does not occur.

### ARTICLE XI
### DISCHARGE

**11.1.**

    **11.1.1** In the event that all allowed Claims are paid under the Plan, or a liquidation does not occur, pursuant to Section 1141 of the Bankruptcy Code, all debts and Claims shall be discharged as of the Effective Date. Nonetheless, if payment in full of all allowed Claims as set forth under the Plan does not occur, and a liquidation occurs, pursuant to Section 1141 of the Bankruptcy Code, no discharge is to be granted.

    **11.1.2** Section 1141(c) of the Bankruptcy Code provides, among other things, that property dealt with by the Plan is free and clear of all claims or interests owed by or against the Debtor. As a result, no person or entity holding a Claim, or an equity interest, may receive any payment from, or seek any recourse against, any assets that are to be distributed

under the Plan other than assets that may be and are required to be distributed to that person under the Plan.

**11.1.3** All creditors are limited, pursuant to Section 1141 of the Code, and pursuant to this Plan, to the remedies provided by this Plan and the Code for all Claim holders and equity holders, including contingent and disputed Claims which are not otherwise allowed Claims, and including any lease or executory contract rejection Claims. Nothing contained in this Plan shall discharge the debt or obligation of any other entity, including any guarantor of any Debtor obligation of the Debtor, except to the extent any party agrees otherwise.

**ARTICLE XII**
**INJUNCTION**

**12.1.**

**All creditors of the Debtor are limited, pursuant to Section 1141 of the Code, to the treatment provided by this Plan and the Code for all Claim holders and equity holders, including contingent and disputed Claims which are not otherwise Allowed Claims. Further, as of the Effective Date, this Plan shall act as an injunction against and shall enjoin all holders of a debt held by a Claim holder, whether or not (i) a proof of Claim based on such debt is filed or deemed filed under Section 501 of the Code; (ii) such Claim is allowed under Section 502 of the Code; or (iii) the holder of such Claim has accepted the Plan; from seeking payment of such Claim from the Debtor other than as set forth in this Plan. The remedy for the breach of a provision of this Plan shall be an action in this Bankruptcy Court. The stay shall remain in effect as to any action against the Debtor through the Effective Date, when it is replaced by the**

21

injunction in this Section and Sections 524(a) and 1141 of the Code; and Claim holders are limited to the remedies set forth herein, under the Code and under applicable law. In the event that any Claim holder believes that a debt has not been paid as required under the Plan, such Claim holder is limited to remedies as provided under the Bankruptcy Code and applicable law.

Further, in the event of non-payment under this Plan, no default may occur until after the expiration of twenty (20) days after receipt of notice of such non-payment has been received by the Debtor and its counsel, Cunningham, Chernicoff & Warshawsky, P.C., Debtor's counsel, without cure of the non-payment. Such notice is to be forwarded to Debtor's counsel at the address set forth at the end of this Plan.

## ARTICLE XIII
## REVESTING

**13.1.**

On the date Effective Date, the Debtor shall be revested with all of its property then existing, free and clear of all Claims, liens and encumbrances arising prior to the date of the entry of the Confirmation Order, except as limited by Article V of the Plan. Under the Plan, Fulton Bank and SEDA COG retain their respective liens in the Debtor's Personal Property, except for Vehicles and in certain specific equipment as set forth in the Plan. Fulton Bank's lien is as to all Assets of the Debtor except for Vehicles and is subject to any purchase money financing. SEDA COG's lien is in specific equipment for which it provided purchase money financing.

# ARTICLE XIV
## PROFESSIONALS

**14.1.**

The Class 1 professional administrative Claim holders are believed to be Cunningham, Chernicoff & Warshawsky, P.C., counsel to the Debtor, Chen & Fan Accountancy Corp, accountants to the Debtor, Beard Law Company, special counsel to the Debtor, Morgan, Lewis & Bockius, LLP, special counsel to the Debtor and Strategic Resources, financial management advisor to the Debtor. Final fee applications of all professionals must be filed within sixty (60) days after the Effective Date or fee claims may be deemed barred.

**14.2.**

All allowed costs of administration for professionals shall be paid as set forth in Section 4.1 of the Plan. All professionals employed by the Debtor may be employed and be entitled to compensation for their services after the Effective Date pursuant to the terms of this Plan. To the extent that any services have been performed by professionals subsequent to the Effective Date of this Plan or the Debtor or Asset Administrators employ new professionals Post-Effective Date, such services and payments will not be subject to the review and approval of the Court. All reasonable fees for professionals for services rendered post-Effective Date shall be paid in the ordinary course.

Case 4:21-bk-01056-MJC    Doc 137    Filed 03/09/22    Entered 03/09/22 17:36:55    Desc
Main Document      Page 23 of 33

## ARTICLE XV
## MISCELLANEOUS

**15.1.**

The Court has fixed a Bar Date for the filing of Claims of April 11, 2022. Notice of such Bar Date has been provided to creditors.

**15.2.**

The "Effective Date of the Plan" will be the first day of the calendar month following sixty (60) days after the Confirmation Order becomes final, and shall not have been reversed, stayed, or adversely modified or amended. Such date shall be subject to the right of the Debtor to request that the Court extend the Effective Date. The Debtor will provide notice of the Effective Date on the docket as well as notice as to when the Effective Date has been extended, if such extension occurs. The Debtor shall provide notice of the Effective Date on the Court's docket within five (5) days after the occurrence of the Effective Date.

**15.3.**

Upon the occurrence of the Effective Date, the Debtor, its creditors and Claim holders, and equity interest holders shall be legally bound by the Plan, whether or not they have accepted the Plan.

**15.4.**

The transfer of any assets including any real estate, if any, after Confirmation of the Plan, shall constitute a transfer under this Plan within the purview of Code Section 1146(a) and shall not be subject to transfer, stamp or similar taxes under any law. Any transfer

Case 4:21-bk-01056-MJC    Doc 137    Filed 03/09/22    Entered 03/09/22 17:36:55    Desc
Main Document    Page 24 of 33

which has been consummated prior to confirmation of the Plan shall not be exempt from transfer, stamp or similar taxes.

**15.5.**

Notwithstanding anything else set forth in the Plan, all quarterly fees due and owing to the United States Trustee under 28 U.S.C. §1930 for the period of time up to Confirmation shall be paid in full by the Effective Date. All quarterly fees payable to the U.S. Trustee for the period after Confirmation of the Plan shall be paid when due until the case is converted, dismissed or closed, whichever first occurs.

**15.6.**

The Debtor may seek as soon as possible, upon proper Motion, for the closing of the case in accordance with the provisions of the Bankruptcy Code and dependent upon the activity in the case and as to the Plan. Until such time as the Court, upon Motion, orders the closing of the case, the Debtor shall be subject to such provisions as are relevant as to the payment of quarterly fees to the Office of the U.S. Trustee.

**15.7.**

Any and all Claims which are listed in the Bankruptcy Schedules as disputed, contingent or unliquidated, and for which no proper Proof of Claim has been filed prior to a claims bar date, shall be disallowed, and shall not be entitled to vote on the Plan, including any rejection Claims on account of any leases or executory contracts. Notwithstanding the foregoing, nothing in this Section shall affect the disallowance of any claim filed pursuant to Section 7.6 of this Plan. If there is an objection pending as to a Claim when voting is to occur, such Claim holder shall not have its Claim considered for voting purposes until such Claim is allowed by the Court. Further, the Notice and Order approving the Disclosure

Case 4:21-bk-01056-MJC    Doc 137    Filed 03/09/22    Entered 03/09/22 17:36:55    Desc
Main Document    Page 25 of 33

Statement may contain therein a notice providing for a bar date for the filing of a proper Proof of Claim.

**15.8.**

Any Class that is unimpaired or not classified shall not vote on the Plan. The Debtor, at its option, shall not be required to send a Disclosure Statement and Plan to Claim holders in any unimpaired Class, but may send informational copies if the Debtor so desires.

**15.9.**

Any amount set forth by a Claim holder on any ballot solicited in this case and voted by a Claim holder shall not be binding upon the Debtor, but rather, the amounts scheduled by the Debtor, if not disputed, contingent or unliquidated, or as set forth in a Proof of Claim filed by a Claim holder, as allowed by the Court, shall control the amount of a creditor's Claim for purposes of voting on the Plan, or distribution under the Plan. Further, in the event that a creditor sets forth an incorrect Class for its Claim on any ballot voted on this Plan, then the Debtor reserves the right to correct such ballot to set forth the proper Class. Except as previously resolved by a Final Order, the Debtor reserves the right to object to any and all Claims filed in this Case, including any late filed Claims, which Claims are filed after the bar date established by the Court. **Unless a Court Order provides otherwise, late filed Claims will not share in any distribution under the Plan.**

**15.10.**

Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania or the Bankruptcy Code, as is applicable.

**15.11.**

In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence, subject, however, to any Order previously entered in this Case.

**15.12.**

The automatic stay of 11 U.S.C. §362 shall remain in effect as under Section 12.1 of the Plan and subject to the injunction set forth in Section 12.1 of the Plan, and under the Bankruptcy Code.

**15.13.**

After the Confirmation Date, but before substantial consummation, the Debtor may, and so long as it does not materially and adversely affect the interests of any claimant, and does not modify the Plan such that the requirements of 11 U.S.C. §§1122 and 1123 are not met, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order Confirming the Plan, and such matters as may be necessary to carry out the purposes and effect of the Plan and without leave of the Court, except as required by the Plan or the Code.

**15.14.**

After the Effective Date, the Debtor may take such actions as necessary to effectuate the Plan without leave of Court, except as required by the Plan or the Code.

**15.15.**

**Pursuant to Sections 105, 524, or 1141 of the Bankruptcy Code, upon the Effective Date, Debtor's counsel and professionals shall be deemed released and held harmless in connection with any Claims, charges or liabilities arising directly or**

indirectly in connection with their service during the Chapter 11 cases, or the representation of the Debtor, except to the extent such liability arose out of fraud, gross negligence, willful or reckless conduct.

**15.16.**

The Debtor and its employees or agents (including the current professionals and any other professionals retained by such persons) shall have no liability to any holder of a Claim or equity interest for any act or omission in connection with, or arising out of the formulation of the Plan, the pursuit of approval of the Disclosure Statement for the Plan, or the solicitation of votes for or confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing contained in this Section shall be deemed to cause a release of any personal guarantee of any party, as to any of the Claims against the Debtor, to the extent that such exist. The Release contained herein is intended to be only with respect to the Plan and Disclosure Statement process.

**15.17.**

For purposes of payments under the Plan to all Claim holders, the Disbursing Agent shall be the Debtor's counsel, Robert E. Chernicoff, or a substitute attorney from his law firm, with respect to unsecured creditors. Counsel may charge a reasonable fee for disbursement, not to exceed ten percent (10%) of all monies disbursed.

28

**15.18.**

Any distribution under the Plan that is returned as undeliverable shall be retained by the Debtor after any applicable period of time for retention has expired. If a distribution is returned as undeliverable, the Debtor shall use its reasonable, best efforts to obtain updated contact information for the effected creditor.

<h3 style="text-align:center">ARTICLE XVI<br>PRIOR ORDERS OF THE BANKRUPTCY COURT</h3>

**16.1.**

Prior Orders of the Bankruptcy Court in the Chapter 11 case shall continue in force and remain effective, to the extent not inconsistent herewith.

<h3 style="text-align:center">ARTICLE XVII<br>MODIFICATION OF THE PLAN</h3>

**17.1. Before Confirmation.**

At any time prior to Confirmation, and prior to substantial confirmation, the Debtor may propose amendments or modifications of the Plan at any time, but such modification may not cause the Plan, as modified, to fail to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. If the Debtor files a modification or amendment with the Bankruptcy Court, the Plan as modified or amended shall become the Plan.

**17.2. After Confirmation.**

At any time after Confirmation, and prior to substantial consummation, the Debtor may, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect

of the Plan. Further, the Debtor may, with approval of the Court, after notice and hearing, modify or amend the Plan to the extent it may materially or adversely affect creditors, and if the Court confirms such Plan as modified or amended, such modified or amended Plan shall become the Plan. Any modification must comply with the requirements of Section 1129 of the Code, and the modified Plan shall not be permitted to the extent that the Plan does not meet the requirements of Sections 1122 and 1123 of the Code. Further, the Debtor shall, to the extent necessary, comply with Section 1125 of the Code.

**ARTICLE XVIII**
**JURISDICTION OF THE COURT**

**18.1.**

The United States Bankruptcy Court for the Middle District of Pennsylvania will retain jurisdiction until this Plan has been fully consummated, or as otherwise Ordered by the Court, notwithstanding the administrative closing of the Chapter 11 Case, including, but not limited to the following purposes:

(a) The classification of the Claim of any creditor and the re-examination of Claims which have been allowed in this case, and the determination of such objections as may be filed to creditors' Claims including as to the amount of any Claim or Administrative Claim. The failure by the Debtor to object to, or to examine any Claim for the purposes of voting on any plan, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine the Claim in whole or in part.

(b) Determination of all questions and disputes regarding title to the assets of the Debtor's estate, and determination of all causes of action, controversies,

30

disputes, conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to any right of the Debtor to recover assets, including accounts receivable, preferences and fraudulent conveyances, pursuant to the provisions of the Bankruptcy Code.

(c)    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

(d)    The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and pursuant to this Plan.

(e)  To enforce and interpret the terms and conditions of this Plan.

(f)  To approve, if necessary, the sale of any assets of the Debtor upon such terms and conditions to be set forth in the proposed sale.

(g)  To enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and to impose such limitations, restrictions, terms, and conditions of such title, rights, and powers as this Court may deem necessary, and to enforce the terms and provisions of this Plan.

(h)  To determine any and all applications, motions, adversary proceedings and contested matters, whether pending before the Court on the Effective Date,  or filed or instituted after the Effective Date, including, without limitation, proceedings to recover voidable transfers under the Code or other applicable law.

Debtor:
**POLYMER INSTRUMENTATION &**
**CONSULTING SERVICES, LTD.**


By: _____*Tim Hsu*_____
    Tim Hsu, Ph.D.

Date:    03/08/2022


**Debtor's Counsel:**

Robert E. Chernicoff, Esquire
Cunningham, Chernicoff & Warshawsky P.C.
2320 North Second Street
P. O. Box 60457
Harrisburg  PA   17106-0457
(717) 238-6570

**EXHIBIT A**

| Name | Percentage of Interest |
|---|---|
| Tim Hsu, Ph.D. | 33.54% |
| Romy Lee | 1.9% |
| Henry Shen | 4.2% |
| Leo Kun-Lin Hsieh | 1.9% |
| We-Pin Fu | 1.1% |
| Yifeng Wang | 7.2% |
| Capital Cube Holdings, Ltd. | 3.2% |
| Yoonsik Kim | 1.9% |
| Hai-Yuang Kuo | 6.4% |
| Chen-Hao Kuo | 1.6% |
| Chin-Chen Sheng | 1.6% |
| Ming-Ming  Chen | 0.3% |
| Chung-Hsiung Yu | 3.2% |
| John Quinn | 0.2% |
| Johnny Chia | 0.6% |
| Eternal Holdings, Inc. | 30% |

Case 4:21-bk-01056-MJC    Doc 137    Filed 03/09/22    Entered 03/09/22 17:36:55    Desc
Main Document      Page 33 of 33